IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| Lesley Demond § | |
| Plaintiff, § | |
| § | |
| v. § | CIVIL ACTION NO. 3:17-cv-01322-D |
| § | |
| Infiniti HR, LLC, Online Sales Step § | |
| By Step, LLC d/b/a eGrowth § | |
| Partners, NCES-EGrowth Partners § | |
| Employee Benefit Plan, and Cynthia § | |
| Gail Stine § | |
| Defendants. § | |

**Cross Plaintiffs' eGrowth Partners and Cynthia Stine's Response
to Infiniti HR, LLC's Motion to Dismiss Pursuant to Contractual Forum
Selection Clause**

Cross-Plaintiffs Online Sales Step by Step, LLC d/b/a eGrowth Partners ("eGrowth") and Cynthia Gail Stine ("Stine) file this Response to Infiniti HR, LLC's Motion to Dismiss pursuant to Contractual Forum Selection Clause and state:

**Summary of Argument**

1.  Under the circumstances of this case, enforcement of the contractual forum selection clause would be unreasonable. The contractual forum selection clause unreasonably deprives Cross-Plaintiffs of a potential remedy and by doing so contravenes a public policy of the state of Texas.

**Factual Background**

2.  Lesley Demond filed this lawsuit on May 17, 2017 and asserted multiple claims against all Defendants. (Dkt. #1). Some of Demond's claims contended that she did not receive proper Cobra benefits and that all Defendants

1

had violated ERISA, COBRA and were liable under federal equitable estoppel. *Id.* All Defendants denied Demond's claims.

3.  eGrowth purchased PEO Services from Infiniti, which included setting up and providing employee benefits to its employees. When eGrowth and Infiniti entered into the relationship, Stine, on eGrowth's behalf, signed a Client Services Agreement ("CSA"). (Dkt. # 76-1, p. 10). Infiniti never signed the CSA. *Id.* However, it did begin to provide PEO Services to eGrowth.

4.  The CSA contains a contractual forum selection clause calling for any claim or dispute between the parties to it to be made or brought only in the Courts of the state of Maryland. It also provides that the Client consents to personal jurisdiction of the State of Maryland in Howard County and to exclusive venue for any lawsuit in the state of Maryland in Howard County. (Dkt. #76-1, ¶ 11).

5.  After Demond filed this lawsuit, eGrowth and Stine answered Demond's claims and then filed cross-claims against Infiniti on July 23, 2017 seeking indemnity under the CSA indemnity provision. (Dkt. 30).

6.  Infiniti moved to dismiss Demond's claim on July 20, 2017 but did not seek dismissal of the cross-claim based on the contractual forum selection clause. (Dkt. # 17 and 18). Instead, Infiniti answered eGrowth's and Stine's cross-claim on August 11, 2017. (Dkt. #51). When Infiniti answered, it asserted the contractual forum provision as an affirmative defense but did not move to dismiss the cross-claims due to the contractual forum clause at any time between August 11, 2017 and March 16, 2018. (Dkt. #51, p. 4).

7. The defendants filed various motions to dismiss Demond's claims. As the parties were about to exchange Rule 26 Disclosures, Stine filed a TCPA Motion to Dismiss on August 10, 2017. (Dkt. #47). When Stine filed that Motion, discovery was stayed temporarily. The parties mediated the case on October 6, 2017 and resolved all claims between Demond and all Defendants. The sole claim remaining was eGrowth and Stine's cross-claim against Infiniti. It took a bit of time for the parties to finalize the resolution with Demond, but the parties filed a Stipulation of Partial Dismissal with Prejudice on November 28, 2017. (Dkt. #70).

8. After the parties reached an agreement with Demond, Stine's TCPA motion was moot and the discovery stay was no longer in effect. eGrowth and Stine discovered facts that give them additional claims against Infiniti above and beyond the breach of contract claim asserted in the current cross-claim. Under the new Scheduling Order, the pleading amendment deadline is June 11, 2018. eGrowth and Stine will be filing a motion for leave to amend the cross-claim to assert additional claims against Infiniti for violations of the Texas Deceptive Trade Practices Act, breach of contract and other additional claims.

**Legal Arguments and Authorities**

9. In determining whether to enforce a mandatory forum selection clause, courts consider: (1) whether the clause is valid and applicable; (2) whether it is enforceable; and (3) whether it is outweighed by various public interest factors. *See Weber v. PACT XPP Techs., AG*, 811 F.3d 758 (5th Cir. 2016); *DBS Solutions, LLC v. Infovista Corp.*, 2016 U. S. Dist. LEXIS 95368, *3 (N.D. Tex. July 21, 2016).

10. Under federal law, forum selection clauses are presumed enforceable and the party resisting enforcement bears a heavy burden of proof. *Ginter ex rel. Ballard v. Belcher, Prendergast & Laporte*, 536 F.3d 439, 444 (5th Cir. 2008). Such forum selection clauses are prima facie valid and should be enforced *unless* the resisting party can show that enforcement is *unreasonable* under the circumstances. *Haynsworth v. The Corp.*, 121 F.3d 956 (5th Cir. 1997); see *also Van Rooyen v. Greystone Home Builders, LLC*, 2018 U.S. Dist. LEXIS 41696, *9 (N.D. Tex. March 14, 2018).

11. Enforcement of a forum selection claim may be considered unreasonable under the following circumstances: (1) the incorporation of the forum selection clause in the agreement was the product of fraud or overreaching; (2) the party opposing the clause will be deprived of his day in court because of the grave inconvenience or unfairness of the selected forum; (3) the fundamental unfairness of the chosen law will deprive the plaintiff of a remedy; or (4) enforcement of the forum selection clause would contravene a strong public policy of the forum state. *Van Rooyen* at *9, quoting *Haynsworth,* 121 F.3d at 963.

12. eGrowth and Stine concede that the incorporation of the forum selection clause in the agreement was not the product of fraud or overreaching.

13. However, eGrowth and Stine contend that the other factors render this forum selection clause unreasonable under the circumstances as they will be deprived of a cause of action against Infiniti and the enforcement of this clause would contravene a strong Texas public policy. They will further suffer due to the

grave inconvenience, cost, and unfairness of having to litigate in Maryland. eGrowth entered into the CSA here in Dallas and Infiniti provided its services to eGrowth in Dallas.  eGrowth is a small company just past its start-up phase.  If eGrowth is required to go to Maryland to litigate its claims against Infiniti, it will be forced to hire Maryland counsel, spend precious funds to educate Maryland counsel and then litigate its claims in Maryland.

14.     eGrowth and Stine will also be deprived of a remedy if forced to litigate in Maryland.  During discovery in this litigation, eGrowth learned that Infiniti offers EPLI insurance coverage to its customers and began doing so as of July 1, 2015. (App. 1).  According to Infiniti's marketing materials, the EPLI insurance coverage overs coverage of $1 million per claim with a $5,000 client retention per claim.  (App. 2).  eGrowth signed the CSA with Infiniti in December 2016 and Infiniti charged eGrowth for EPLI insurance coverage each month.

15.     Well after the Demond lawsuit was filed, eGrowth learned that EPLI insurance coverage might exist for it through Infiniti and made a demand to Infiniti for coverage.  Despite having received a July 26, 2017 letter from its carrier acknowledging that the Demond lawsuit contained a covered claim, Infiniti told eGrowth and Stine that there was no EPLI coverage available to them.  (App. 3-9). Thus, eGrowth and Stine were not provided a defense for this covered claim and have not been reimbursed any costs of defense from the insurance carrier despite being sued in a lawsuit that had a covered claim.  The carrier made no contribution to the Demond resolution.

16. All of eGrowth and Stine's costs of defense should have been covered by either Infiniti (after such costs exceeded the $5,000 per client retention) and then the carrier (after costs exceeded the $100,000 retention). Neither Infiniti nor the carrier covered any costs.

17. In addition to the contractual indemnity claims currently pending, eGrowth and Stine believe that they have both breach of contract claims against Infiniti for its failure to provide a defense to them after their costs of defense exceeded $5,000 and claims for violations of the Texas Deceptive Trade Practices Act. eGrowth and Stine intend to file a motion for leave to amend shortly requesting permission to add these claims.

18. Texas has an extremely strong public policy interest in protecting consumers against false, misleading and deceptive business practices. Tex. Bus. & Comm. Code § 17.44(a). The statute was enacted specifically to protect consumers from false, misleading, and deceptive business practices and unconscionable actions and was purposely designed to provide efficient and economical procedures for the consumer to secure such protection. *Id.*

19. eGrowth and Stine do not have a remedy equivalent to the Texas Deceptive Trade Practices Act under Maryland's Consumer Protection Act. Md. Code Ann. Com. Law § 13-101 *et. seq*. If the case is transferred to Maryland, eGrowth and Stine could not pursue a claim under that statute as it does not apply to businesses. The DTPA is unique in that a business can be a "consumer" for purposes of a DTPA claim. Tex. Bus. & Comm. Code § 17.45(10). However, the

Maryland Consumer Protection Act applies only to consumer transactions. Md. Code Ann. Com. Law § 13-303. There, consumer transactions include "consumer credit, debts, goods, realty and services" which are defined to be primarily for personal, household, family or agricultural purposes. Md. Code Ann. Com. Law § 13-101(c) and (d). Thus, eGrowth and Stine would lose a remedy available to them if the case is dismissed and required to be filed in Maryland.

20. Texas has a strong public policy in enforcing the DTPA. It articulated that purpose in the actual statutory language by saying the statute is to be liberally construed to promote its purposes, which are to protect consumers from false, misleading and deceptive practices and to provide an efficient and economical procedure to secure such protection. Tex. Bus. & Com. Code § 17.44(a). Enforcement of the forum selection clause in this case would contravene a strong statutory public policy of Texas.

21. eGrowth and Stine have met their high burden to show that enforcement of the forum selection clause would be unreasonable under the circumstances because they have shown that there is a remedy available to them in Texas that would not be available to them in Maryland. They have also shown that Texas has a strong public policy interest in enforcing the DTPA. Thus, this situation contrasts with the facts in *Van Rooyen* where the court found that the Van Rooyens' did not meet their burden to show that applying Michigan law would deprive them of a remedy or contravene a strong public policy of Texas. *Van Rooyen*, 2018 U.S. Dist. LEXIS at *9-10. It also contrasts with the findings in *Steve*

*Silver Co. v. Manna Freight System*, 2014 U.S. Dist. LEXIS 146725, *4 (N.D. Tex. Oct. 15, 2014) in which the court found the party opposing the forum selection clause had not identified what strong Texas public policy applied to its facts.

22.     Because enforcement of the forum selection clause is unreasonable under these facts, the court does not need to consider the public interest factors relevant to a § 1404(a) transfer of venue. Nevertheless, eGrowth and Stine address those factors.

23.     The first public interest factor looks at comparative administrative difficulties due to court congestion in the various venues. At this time, eGrowth and Stine have no information to support that there is a greater level of court congestion in Howard County, Maryland than Texas. Thus, this factor is neutral.

24.     The second public interest factor evaluates the local interest in the dispute and generally favors the venue where the acts giving rise to the lawsuit occurred. *Van Rooyen* at *10. This factor favors Texas. Infiniti contracted with eGrowth, a Texas company, in Texas and provided its services to Infiniti in Texas. Infiniti sent the CSA to Stine in Texas for execution. Demond worked for eGrowth in Texas and Infiniti sent Demond information related to her COBRA rights in Texas. Because the events giving rise to this lawsuit relate to a contract signed in Texas, this factor weighs in favor of maintaining the case in this district.

25.     The third public interest factor looks at the familiarity of the forum with the law that will govern the case. The CSA calls for the application of

Maryland law. A Maryland court is more familiar with Maryland law. This factor would favor Maryland.

26. The fourth public interest factor considers the avoidance of problems of conflicts of laws or the application of foreign law. No such problems exist. This factor is neutral.

27. Of the public interest factors, two are neutral, one favors keeping the case in Texas and the other favors transfer. Given this and given that eGrowth and Stine satisfied their heavy burden to show that enforcement of the forum selection clause in this case would be unreasonable, the Court should deny Infiniti's motion to dismiss.

28. Wherefore, eGrowth and Stine request that the Court deny Infiniti's Motion to Dismiss and enter such other and further relief to which they are just entitled.

    Respectfully submitted,

    /s/ Karen K. Fitzgerald
    KAREN K. FITZGERALD
    karen@jtlaw.com
    State Bar No. 11656750

    **Johnston Tobey Baruch PC**
    3308 Oak Grove
    Dallas, Texas 75204
    Phone:    (214) 741-6260
    Fax:  (214) 741-6248

    /s/ Jeffrey T. Breloski
    Jeffrey T. Breloski
    jbreloski@ATLawip.com
    Georgia Bar No. 858291
    *Admitted Pro Hac Vice*

ATL*AWIP* LLC
2065 Compton Way
Johns Creek, Georgia 30022
Phone: (706) 593-2865
Fax:    (770) 680-2461

**ATTORNEY FOR DEFENDANT EGROWTH PARTNERS AND CYNTHIA STINE**

**CERTIFICATE OF SERVICE**

On April 5, 2018, I electronically submitted the foregoing document with the clerk of court for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the court. I certify that I have served all counsel and/or pro se parties of record electronically or by another manner authorized by Federal Rule of Civil Procedure 5(b)(2).

/s/ Karen K. Fitzgerald