IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

LESLEY DEMOND,                              §
                                           §
                    Plaintiff,             §
                                           §   Civil Action No. 3:17-CV-1322-D
VS.                                        §
                                           §
INFINITI HR, LLC, et al.,                  §
                                           §
                    Defendants.            §

MEMORANDUM OPINION
AND ORDER

In this action arising out of an employment dispute, defendant-cross-defendant Infiniti

HR LLC ("Infiniti") moves to dismiss the cross-claims of defendants-cross-plaintiffs Online

Sales Step by Step, LLC d/b/a eGrowth Partners ("eGrowth") and Cynthia Gail Stine

("Stine") under the doctrine of *forum non conveniens*. Concluding that the terms of a

mandatory and enforceable forum-selection clause require that the cross-claims be brought

in Maryland state court, the court grants the motion and dismisses the cross-claims of

eGrowth and Stine without prejudice.

I

Infiniti is a Professional Employer Organization ("PEO") that since December 2016

has provided human resources services to eGrowth under the terms of a Client Service

Agreement ("CSA"). The CSA provides, in pertinent part, that "[Infiniti] agrees to

indemnify, hold harmless and defend [eGrowth], its agents and Assigned Employees from

any and all claims, causes of action or demands that [eGrowth] may suffer or become liable

for as a result of Infiniti HR's wrongful actions, omissions or breach of this Agreement[.]"
Infiniti 3/16/18 App. at Ex. A.[1]

Plaintiff Lesley Demond ("Demond") brought this lawsuit against Infiniti, eGrowth, NCES-eGrowth Partners Employee Group Benefit Plan ("NCES"), and Stine, alleging claims for defamation,[2] equitable estoppel, and violations of the Fair Labor Standards Act of 1938, 29 U.S.C. § 201 *et seq.*, the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001-1461, and the Consolidated Omnibus Budget Reconciliation Act of 1985 ("COBRA"), as amended, 29 U.S.C. § 1161 *et seq.* After Demond filed this suit, eGrowth and Stine learned that Infiniti offers Employment Practices Liability Insurance ("EPLI") coverage to its customers and made a demand on Infiniti for coverage. Infiniti informed eGrowth and Stine that there was no EPLI coverage available to them because eGrowth had not selected EPLI coverage, eGrowth had not paid for EPLI coverage, and eGrowth's CFO had declined EPLI insurance coverage. eGrowth and Stine maintain that Infiniti's statements

---

[1]The court is citing the record in this manner because Infiniti did not comply with N.D. Tex. Civ. R. 7.1(i) in briefing its motion to dismiss. Rule 7.1(i)(1) provides that "[a] party who relies on materials—including depositions, documents, electronically stored information, affidavits, declarations, stipulations, admissions, interrogatory answers, or other materials—to support or oppose a motion must include the materials in an appendix." Rule 7.1(i)(4) provides, in relevant part, that "[e]ach page of the appendix must be numbered legibly in the lower, right-hand corner. The first page must be numbered as '1,' and succeeding pages must be numbered sequentially through the last page of the entire appendix (i.e., the numbering system must not re-start with each succeeding document in the appendix)." Infiniti did not include the exhibits attached to its motion in a properly compiled and paginated appendix.

[2]Demond alleged her defamation claim against Stine only.

were false and that Infiniti charged eGrowth for EPLI during each month of their business relationship.

eGrowth and Stine cross-claimed against Infiniti for breach of contract, alleging that Infiniti had breached its obligations under the CSA by failing and refusing to indemnify eGrowth and Stine for Demond's claims against them. In November 2017 a stipulation of dismissal was filed in this lawsuit, stipulating that "all claims asserted or that could have been asserted by Plaintiff against Defendants and by Defendants against Plaintiff Lesley Demond are dismissed with prejudice." Nov. 28, 2017 Stipulation 1. The stipulation clarified that the cross-claim of eGrowth and Stine against Infiniti remains pending.[3]

Infiniti then filed the instant motion to dismiss eGrowth and Stine's cross-claim based on the doctrine of *forum non conveniens*, contending that a mandatory forum selection clause in the CSA requires that the claim be brought in Howard County, Maryland state court. eGrowth and Stine later filed a motion for leave to amend their cross-claim to allege additional cross-claims for breach of contract (related to the alleged failure of Infiniti to provide eGrowth and Stine with EPLI insurance) and for violation of the Texas Deceptive Trade Practices-Consumer Protection Act ("DTPA"), Tex. Bus. & Com. Code Ann. §§ 17.41-17.63 (West 2011). The court granted the motion for leave to amend, but permitted additional briefing on the question whether the amended cross-claims affect the merits of

---

[3]Although the cross-claim was filed by eGrowth and Stine, the stipulation provides that "[d]efendant eGrowth Partners' Cross-Claim against Infiniti HR, LLC is not dismissed by this stipulation and remains pending." Nov. 28, 2017 Stipulation 1.

Infiniti's *forum non conveniens* motion. Briefing is now complete, and the motion to dismiss is ripe for decision.

## II

The Supreme Court has confirmed that "the appropriate way to enforce a forum-selection clause pointing to a state or foreign forum is through the doctrine of *forum non conveniens*." *Atl. Marine Constr. Co. v. U.S. Dist. Ct. for W. Dist. of Tex.*, 571 U.S. 49, 60 (2013). Usually, a court applying the doctrine of *forum non conveniens* must determine whether there is an adequate alternative forum, and, if so, must decide which forum is best suited to the litigation by considering "a variety of private-and public-interest factors and giving deference to the plaintiff's choice of forum."[4] *Barnett v. DynCorp Int'l, L.L.C.*, 831 F.3d 296, 300 (5th Cir. 2016) (quoting *DTEX, LLC v. BBVA Bancomer, S.A.*, 508 F.3d 785, 794-95 (5th Cir. 2007)). The existence of a mandatory, valid forum-selection clause, however, simplifies the analysis in two ways: (1) the "plaintiff's choice of forum merits no weight" because, by contracting for a specific forum, "the plaintiff has effectively exercised its 'venue privilege' before a dispute arises," and (2) the private-interest factors "weigh entirely in favor of the preselected forum," so that the "district court may consider arguments about public-interest factors only." *Id.* (quoting *Atl. Marine*, 571 U.S. at 63-64). Where there is a valid and mandatory forum-selection clause, the party defying the forum selection clause bears the burden of establishing that the public-interest factors "overwhelmingly disfavor"

---

[4]In *Atlantic Marine* the Court identified non-exclusive private- and public-interest factors. *Atl. Marine*, 571 U.S. at 62 n.6.

dismissal. *Atl. Marine*, 571 U.S. at 67. The Supreme Court has repeatedly emphasized that "a valid forum-selection clause [should be] given controlling weight in all but the most exceptional cases." *Id.* at 63 (alteration in original) (quoting *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 33 (1988) (Kennedy, J., concurring)).

## III

The court must first determine whether the forum-selection clause in the CSA is mandatory as to eGrowth *and* Stine or whether it applies only to eGrowth, the defined "Client" in the CSA.

## A

Although federal law "governs the *enforceability* of forum selection clauses, it does not govern the *interpretation* of such clauses." *DBS Sols. LLC v. Infovista Corp.*, 2016 WL 3926505, at *2 (N.D. Tex. July 21, 2016) (Lynn, C.J.) (citing *Weber v. PACT XPP Techs., AG*, 811 F.3d 758, 770 (5th Cir. 2016)). Federal courts sitting in diversity must apply the forum state's choice-of-law rules. *Weber*, 811 F.3d at 770.

Texas courts "permit choice-of-law agreements and the default position is that they are enforceable." *Cardoni v. Prosperity Bank*, 805 F.3d 573, 581 (5th Cir. 2015); *see also Exxon Mobil Corp. v. Drennen*, 452 S.W.3d 319, 324 (Tex. 2014). Here, the CSA provides that it "shall be governed by and construed in accordance with the laws of Maryland." Infiniti 3/16/18 App. at Ex. A. The court therefore concludes that the forum-selection clause should be interpreted according to Maryland law.

Under Maryland law, "[t]he fundamental rule in the construction and interpretation of contracts is that the intention of the parties as expressed in the language of the contract

controls the analysis." *Ford v. Antwerpen Motorcars Ltd.*, 117 A.3d 21, 25 (Md. 2015) (quoting *Curtis G. Testerman Co. v. Buck*, 667 A.2d 649, 654 (Md. 1995)). Maryland follows the law of objective interpretation of contracts, which gives plain meaning to the unambiguous language of the agreement. *DIRECTV, Inc. v. Mattingly*, 829 A.2d 626, 632 (Md. 2003). Typically, a court focuses on "the four corners of the agreement," and "the court should give effect to every clause so as not to disregard a meaningful part of the express language of the written contract." *Allegis Grp., Inc. v. Jordan*, 2016 WL 1077098, at *4 (D. Md. Mar. 18, 2016) (quoting *Clancy v. King*, 954 A.2d 1092, 1101 (Md. 2008)), *vacated in part on reconsideration on other grounds*, 2017 WL 877271 (D. Md. Mar. 6, 2017). As a result, the court "giv[es] effect to the clear terms of the contract regardless of what the parties to the contract may have believed those terms to mean." *Clancy*, 954 A.2d at 1101 (quoting *United Servs. Auto. Ass'n v. Riley*, 899 A.2d 819, 833 (Md. 2006)).

B

Paragraph 11 of the CSA provides, in pertinent part:

> [t]his Agreement shall be governed by and construed in accordance with the laws of Maryland. The parties agree that any claim or dispute between or among them, their respective subsidiaries, agents and employees shall be made or brought only in the courts of the state of Maryland. Client consents to personal jurisdiction of the State of Maryland in Howard County, and to exclusive venue for any lawsuit in the state of Maryland in Howard County, and waives any objections to this jurisdiction and venue.

Infiniti 3/16/18 App. at Ex. A. eGrowth and Stine maintain that Infiniti limited the sentence that specifically consents to personal jurisdiction and exclusive venue in Howard County to

the "Client," i.e., eGrowth, and that although "the second sentence indicates that the parties agree that any claim or dispute between them or their subsidiaries, agents or employees shall be brought only in Maryland, that sentence is superfluous given the specificity of the third sentence of Paragraph 11." eGrowth and Stine Surreply 4. The court disagrees with this interpretation.

The CSA clearly and unambiguously states that the parties agree that any claim or dispute between or among "them, their respective subsidiaries, agents and employees" shall be brought only in the courts of the state of Maryland. Infiniti 3/16/18 App. at Ex. A. It is undisputed that Stine, who actually signed the CSA as "Partner" for eGrowth, was acting as eGrowth's agent. Accordingly, the court concludes that the forum-selection clause is mandatory as to both eGrowth (the "Client") and Stine (eGrowth's agent).

IV

Having determined that the forum-selection clause in the CSA is binding as to both eGrowth and Stine, the court next considers whether the forum-selection clause applies to all of eGrowth and Stine's cross-claims or only to the cross-claim for breach of contract for contractual indemnity.

A

"In determining whether the forum selection clause applies, the court will assume not only that federal law governs the determination of whether an enforceable forum selection clause exists, but also that federal law controls whether [eGrowth and Stine's cross-claims] fall[ ] within the scope of the forum selection clause." *Your Town Yellow Pages, L.L.C. v.*

*Liberty Press, L.L.C.*, 2009 WL 3645094, at *3 (N.D. Tex. Nov. 2, 2009) (Fitzwater, C.J.) (internal quotation marks and citation omitted). The court must examine the language of the contract to determine which causes of action are governed by the forum selection clause. *Aerus LLC v. Pro Team, Inc.*, 2005 WL 1131093, at *7 (N.D. Tex. May 9, 2005) (Lynn, J.) (citing cases). "The scope of a forum selection clause is not limited solely to claims for breach of the contract that contains it." *MaxEn Capital, LLC v. Sutherland*, 2009 WL 936895, at *6 (S.D. Tex. Apr. 3, 2009) (citing *Roby v. Corp. of Lloyd's*, 996 F.2d 1353, 1361 (2d Cir. 1993)). Whether a forum selection clause encompasses other claims depends principally on how broadly the clause is worded. *Id.*

B

The forum-selection clause in the CSA states, in pertinent part, that "[t]he parties agree that *any claim or dispute* between or among them, their respective subsidiaries, agents and employees shall be made or brought only in the courts of the state of Maryland."[5] Infiniti 3/16/18 App. at Ex. A (emphasis added). Because the forum-selection clause applies broadly to "any claim or dispute," and is not limited only to claims arising directly out of the CSA itself, the court will construe it broadly.

_____

[5]The term "shall" makes clear that the language in the CSA is mandatory by going "beyond establishing that a particular forum will have jurisdiction and . . . clearly demonstrat[ing] the parties' intent to make that jurisdiction exclusive." *City of New Orleans v. Mun. Admin. Servs., Inc.*, 376 F.3d 501, 504 (5th Cir. 2004); *see also Caldas & Sons, Inc. v. Willingham*, 17 F.3d 123, 127 (5th Cir. 1994) (noting that "shall" in forum selection clauses is "generally mandatory"). In fact, eGrowth and Stine do not challenge the premise that, if the forum-selection clause applies to a given dispute, it is mandatory.

In determining the scope of the forum-selection clause, the court must also look to the operative facts underlying the alleged causes of action. "If the substance of the . . . claims, stripped of their labels, does not fall within the scope of the forum selection clause, the clause cannot apply." *Aerus LLC*, 2005 WL 1131093, at *7 (citations, emphasis, and brackets omitted). "Claims that arise out of the contractual relationship and implicate the agreement are subject to the forum selection clause." *Id.* (quoting *Kessmann & Assocs. v. Barton-Aschman Assocs., Inc.*, 10 F.Supp.2d 682, 688 (S.D. Tex. 1997)). When the claims at issue are tort claims, the applicability of a contractual forum selection clause to those claims "depends on whether resolution of the claims relates to interpretation of the contract." *Pinnacle Interior Elements, Ltd. v. Panalpina, Inc.*, 2010 WL 445927, at *5 (N.D. Tex. Feb. 9, 2010) (Fish, J.) (citing *Psarros v. Avior Shipping, Inc*., 192 F.Supp.2d 751, 754 (S.D. Tex. 2002)).

The entirety of eGrowth and Stine's argument regarding the scope of the forum-selection clause is as follows:

> [t]he Amended Cross-Claim now includes these claims: (1) eGrowth and Stine claims for breach of contract for contractual indemnity; (2) eGrowth and Stine claims for breach of contract for failure to provide eGrowth and Stine (as an Assigned Employee) with EPLI insurance coverage; (3) eGrowth's claims for DTPA violations[;] and (4) eGrowth and Stine's claims for fraud due to Infiniti's material misrepresentations to them about EPLI coverage for the Demond claims. Of these claims, the only claims that arise under the [CSA] are the breach of contract for contractual indemnity. Three of the four claims asserted are not within the scope of the CSA.

eGrowth and Stine Surreply 1-2 (footnote and paragraph numbering omitted). Although they

make the conclusory assertion that three of their four cross-claims are not within the scope of the CSA, they provide no argument for *why* the cross-claims for fraud, EPLI breach of contract, and violation of the DTPA do not fall within the scope of the CSA, or *why* the forum-selection clause in the CSA does not encompass these cross-claims.

Infiniti counters that the extra-contractual DTPA, fraud, and EPLI breach-of-contract claims all arise out of the CSA and would not exist but for the parties' business dealings under the CSA. The court agrees. eGrowth and Stine specifically plead that "[w]hen eGrowth signed the CSA with Infiniti, eGrowth (and its Assigned Employees) became protected by an EPLI insurance policy[.]" Am. Cross-Claims ¶ 24. In other words, any alleged entitlement to EPLI coverage stems entirely from the contractual relationship created by the CSA. Construing the forum-selection clause broadly, the court concludes that all of the cross-claims alleged in this lawsuit constitute a "claim or dispute" among the parties to the CSA, and that eGrowth and Stine's fraud, DTPA, and EPLI breach of contract claims "arise out of the contractual relationship and implicate the [CSA]" and are thus subject to the forum-selection clause. *Aerus LLC*, 2005 WL 1131093, at *7.

V

Having determined that the forum-selection clause in the CSA is mandatory and applicable to the cross-claims asserted in this lawsuit, the court now turns to the question whether it is enforceable.

Federal law governs whether the CSA's forum-selection clause is binding in this action. *See Haynsworth v. The Corp.*, 121 F.3d 956, 962 (5th Cir. 1997) ("The proper law to apply to [determine the enforceability of a forum-selection clause] is federal, whether jurisdiction be based on diversity, a federal question, or some combination of the two."). "Under federal law, forum-selection clauses are presumed enforceable, and the party resisting enforcement bears a 'heavy burden of proof.'" *Ginter ex rel. Ballard v. Belcher, Prendergast & Laporte*, 536 F.3d 439, 441 (5th Cir. 2008) (quoting *Haynsworth*, 121 F.3d at 963). "Such clauses 'are prima facie valid and should be enforced unless enforcement is shown by the resisting party to be "unreasonable" under the circumstances.'" *Braspetro Oil Servs. Co. v. Modec (USA), Inc.*, 240 Fed. Appx. 612, 615 (5th Cir. 2007) (per curiam) (quoting *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10 (1972)). A forum-selection clause may be considered unreasonable if

> (1) the incorporation of the forum selection clause into the agreement was the product of the fraud or overreaching; (2) the party seeking to escape enforcement "will for all practical purposes be deprived of his day in court" because of the grave inconvenience or unfairness of the selected forum; (3) the fundamental unfairness of the chosen law will deprive the plaintiff of a remedy; or (4) enforcement of the forum selection clause would contravene a strong public policy of the forum state.

*Id.* (quoting *Haynsworth*, 121 F.3d at 963).

eGrowth and Stine contend that the forum-selection clause in the CSA is unreasonable because its enforcement will deprive them of a remedy and will contravene a strong Texas public policy.[6]  They maintain that Texas has a strong public policy interest in protecting consumers against false, misleading, and deceptive business practices, and that Texas enacted the DTPA to further this policy; the DTPA is a "unique consumer protection statute," eGrowth and Stine Surreply 8, because it defines "consumers" to include businesses; the DTPA provides for treble damages and attorney's fees, which are "more significant" remedies than those available under common law, *id.*; if the case is transferred to Maryland, eGrowth and Stine cannot pursue claims under Maryland's Consumer Protection Act because that statute only applies to "consumer" transactions, which are defined to be primarily for personal, household, family, or agricultural purposes; and, accordingly, if this case is dismissed and re-filed in Maryland, eGrowth and Stine will not have available to them an "essentially identical" remedy to that provided by the DTPA.

Infiniti replies that eGrowth and Stine have not argued that Maryland law is so

---

[6]In their response, eGrowth and Stine also contend that enforcing the forum-selection clause would cause them to suffer due to the "grave inconvenience, cost, and unfairness of having to litigate in Maryland."  They posit in support that eGrowth entered into the CSA in Dallas, Infiniti provided its services to eGrowth in Dallas, eGrowth is a small company just beyond its start-up phase, and litigating this case in Maryland will cause it to incur additional costs. eGrowth and Stine Resp. Br. 4-5.  eGrowth and Stine do not include this argument in their surreply, however, and, in any event, do not contend that the "grave inconvenience" of having to litigate this case in Maryland will for all practical purposes deprive them of their day in court.

fundamentally unfair as to deprive them of a remedy; there is no authority for the proposition that a forum-selection clause cannot be enforced unless "essentially identical" remedies are available in the transferee form; eGrowth and Stine's "tortured" reading of *Weber*, 811 F.3d at 774, would lead to absurd results because it would render unenforceable any forum-selection/choice-of-law clause that would effect waiver of any cause of action; notwithstanding Texas' public policy behind the DTPA, Texas has a countervailing strong public policy that parties be held to what they contracted for; Texas courts have repeatedly held that a forum-selection clause specifying a mandatory forum other than Texas does not constitute a waiver of rights under the DTPA; and, in any event:

> [o]nce this case is dismissed, eGrowth can file suit in Howard County, Maryland, and assert Texas DTPA claims there. [Infiniti] will then assert that the parties agreed that Maryland law would govern to the exclusion of the DTPA and Texas law. Cross-Claimants can assert their DTPA waiver arguments at that time. The Maryland court can then decide the validity of any waiver effected by the Agreement's choice-of-law provision. But merely dismissing this matter without prejudice to refiling will not waive or foreclose any claims whatsoever.

Infiniti Final Reply Br. 4-5.

## C

As noted, eGrowth and Stine bear the burden of establishing that enforcement of the forum selection clause would be unreasonable. They essentially argue that requiring litigation of their claims in Maryland would deprive them of a remedy and would violate Texas public policy because they would no longer be able to recover the treble damages and attorney's fees that the DTPA authorizes. For several reasons, eGrowth and Stine's

arguments lack force.

First, a dismissal of eGrowth and Stine's cross-claims on the basis of *forum non conveniens* will not preclude them from re-filing their DTPA claims in Maryland. The choice-of-law provision in the CSA states that the *CSA* "shall be governed by and construed in accordance with the laws of Maryland." Infiniti 3/16/18 App. at Ex. A. It will be up to the Maryland court to decide whether this choice-of-law provision applies to eGrowth and Stine's fraud and DTPA causes of action,[7] and, if so, whether the CSA impermissibly waives eGrowth and Stine's rights under the DTPA[8].

Second, assuming *arguendo* that the refiling of eGrowth and Stine's cross-claims in Maryland results in the unavailability of their DTPA cause of action, under Fifth Circuit authority, a forum selection clause is only unreasonable where such a clause will result in "*fundamental unfairness*" by "depriv[ing] the plaintiff of a remedy." *Haynsworth*, 121 F.3d at 963 (emphasis added). eGrowth and Stine do not argue that the remedies available in Maryland are "so inadequate that enforcement [of the forum-selection clause] would be fundamentally unfair," as *Haynsworth* requires. *See Calix-Chacon v. Global Int'l Marine, Inc.*, 493 F.3d 507, 515 (5th Cir. 2007). eGrowth and Stine bring claims under Texas law for, *inter alia*, fraud and violation of the DTPA. Although eGrowth and Stine may not have

---

[7]The court notes that, if the lawsuit remained in this forum, it would be necessary for this court to decide whether the Maryland choice-of-law provision precludes eGrowth and Stine's DTPA cause of action; there is no indication that the resolution of this question would differ depending on whether this court or the Maryland court decided the choice-of-law issue.

[8]The court expresses no view on the question of waiver.

recourse to these exact claims in Maryland, Maryland recognizes fraud, fraudulent misrepresentation, and unconscionability causes of action; consequently, enforcing the forum-selection clause will not deprive eGrowth and Stine of any substantive rights.[9]

Third, as this court has previously held, "the mere deprivation of a right to sue under the DTPA is not a sufficient basis for holding enforcement of a forum selection or choice-of-law clause unreasonable." *CK DFW Partners Ltd. v. City Kitchens, Inc.*, 2007 WL 2381259, at *7 (N.D. Tex. Aug. 17, 2007) (Fitzwater, J.). All "[c]hoices of law and forum in contracts have the incidental effect of preventing one party from getting to use the laws of all the excluded jurisdictions." *Haynsworth v. Lloyd's of London*, 933 F. Supp. 1315, 1323 (S.D. Tex. 1996). "Contractually selecting a forum for future litigation is not an impermissible waiver of rights and does not violate public policy."[10] *Id.* (holding that choice-of-law and forum selection clauses requiring that plaintiffs' claims be brought in England were not

---

[9]eGrowth and Stine rely on the following statement from *Weber* to argue that a forum-selection clause is enforceable only if the party resisting its enforcement "would . . . have a remedy *essentially identical* to the relief available [in the original forum]," eGrowth and Stine Surreply 8: "Weber's suggestion that he would not have any remedy under German law is unpersuasive. There *are* causes of actions available under German law that would allow him to seek relief essentially identical to the relief available under the quasi-contractual, equity claims he advances in the litigation here." *Weber*, 811 F.3d at 774. The court disagrees with this interpretation of *Weber*. In that case the panel merely concluded that, under the circumstances of that case, there *were* causes of action that would enable the plaintiff to seek "essentially identical" relief; the panel did not hold that the availability of "essentially identical" relief was a requirement for a forum-selection clause to be enforceable.

[10]Moreover, "[i]f a party to a contract could avoid its contractual obligations merely by asserting DTPA claims, then forum selection clauses would effectively become unenforceable." Infiniti Reply 3.

invalidated by anti-waiver provision of § 17.42); *see also Hoffman v. Burroughs Corp.*, 571 F. Supp. 545, 550 (N.D. Tex. 1982) (Hill, J.) ("[T]o the extent that policies of the Texas DTPA might be implicitly contravened by enforcing a forum selection clause, that policy would be oriented towards protecting ordinary consumers, as compared with knowledgeable, experienced businessmen").

eGrowth and Stine have failed to make a "clear showing" that the forum-selection clause is unreasonable under the circumstances. *Haynsworth*, 121 F.3d at 963. Accordingly, the court holds that the CSA's forum-selection clause is enforceable and binding on eGrowth and Stine.

## VI

Having determined that the forum-selection clause is enforceable, the court now considers the public interest factors relevant to a motion to dismiss for *forum non conveniens*.

## A

The first public interest factor evaluates the comparative administrative difficulties due to court congestion in the potential venues. eGrowth and Stine maintain that this factor is neutral; Infiniti contends that this factor weighs in favor of dismissal because the Northern District of Texas has three judicial vacancies[11] and there is no evidence in the record of *any* excessive docket congestion in Maryland state court. eGrowth and Stine have not established that the first factor weighs against dismissal.

---

[11]In the next two months, this number will rise to five when the undersigned, followed by Judge McBryde, take senior status.

B

The second public interest factor evaluates the local interest in the dispute. "This factor generally favors the venue where the acts giving rise to the lawsuit occurred." *Metromedia Steakhouses Co. v. BMJ Foods P.R., Inc.*, 2008 WL 794533, at *3 (N.D. Tex. Mar. 26, 2008) (Fitzwater, C.J.) (citing *Spiegelberg v. Collegiate Licensing Co.*, 402 F.Supp.2d 786, 792 (S.D. Tex. 2005)). eGrowth and Stine maintain that this factor favors Texas because Infiniti contracted with eGrowth, a Texas company, in Texas and provided its services to eGrowth in Texas; Infiniti sent the CSA to Stine in Texas for execution; and Demond worked for eGrowth in Texas and Infiniti sent Demond information related to her COBRA rights in Texas. Infiniti responds that this is a contract dispute arising out of an arms-length interstate business transaction between sophisticated parties, one of which is a Maryland limited liability company that performed its obligations under the contract at issue in Maryland.

The court concludes that the second factor is neutral. Although eGrowth and Stine are located in Texas, and Demond, the plaintiff in this lawsuit, worked for eGrowth in Texas, there is no indication that Texas would have a greater interest in this litigation than would Maryland, the state where the Infiniti is located and performed its contractual obligations.

C

The fourth public interest factor considers the avoidance of unnecessary problems of conflict of laws or the application of foreign law. There is no suggestion in the briefing that there is a problem of conflict of laws or of applying foreign laws, although eGrowth and

Stine concede that the CSA calls for the application of Maryland law and a Maryland court would be more familiar with Maryland law. The court concludes that this factor is either neutral or weighs in favor of dismissal.

D

Having analyzed the public-interest factors, the court concludes that eGrowth and Stine are unable to overcome the governing forum-selection clause. "[A] valid forum-selection clause [should be] given controlling weight in all but the most exceptional cases.'" *Atl. Marine*, 571 U.S. at 63 (second alteration in original) (quoting *Stewart*, 487 U.S. at 33 (Kennedy, J., concurring)). "As the part[ies] acting in violation of the forum-selection clause, [eGrowth and Stine] must bear the burden of showing that public-interest factors overwhelmingly disfavor" dismissal. *Id.* at 67. As the Supreme Court explained in the analogous context of a motion to transfer venue:

> [b]ecause [the public-interest] factors will rarely defeat a transfer motion, the practical result is that forum-selection clauses should control except in unusual cases. Although it is "conceivable in a particular case" that the district court "would refuse to transfer a case notwithstanding the counterweight of a forum-selection clause," such cases will not be common.

*Id.* at 64 (quoting *Stewart*, 487 U.S. at 30-31). Given the analysis of the factors, eGrowth and Stine have failed to meet their burden of demonstrating that this is an unusual and uncommon case in which the public-interest factors overwhelmingly disfavor dismissal on the basis of *forum non conveniens*.

* * *

Accordingly, for the reasons explained, Infiniti's motion to dismiss is granted. The cross-claims of eGrowth and Stine are dismissed without prejudice by judgment entered today. Because these are the only claims that remain in this case following entry of the stipulation of partial dismissal, the judgment is final and closes this case.

**SO ORDERED**.

August 30, 2018.

_____
SIDNEY A. FITZWATER
UNITED STATES DISTRICT JUDGE